**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT MCCRUMB, | ) | |
| | ) | No. 2:21-cv-718 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| UNION RAILROAD COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 20) filed by Defendant Union Railroad Company, LLC.   In this case, Plaintiff Scott McCrumb alleges that Defendant, his former employer, targeted and improperly terminated Plaintiff on the basis of his age in an effort to "weed out" employees over the age of 40.   Defendant seeks dismissal of Plaintiff's operative Amended Complaint (ECF No. 19) (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) on the basis that this Court lacks subject matter jurisdiction in this case because "all claims against Defendant are entirely precluded and foreclosed by the Railway Labor Act, 45 U.S.C. § 151, et seq. ("RLA")." Mot. ¶ 2, ECF No. 20.   In the alternative, Defendant seeks dismissal of Plaintiff's Age Discrimination in Employment Act ("ADEA") claim (Count I) and Pennsylvania Human Relations Act ("PHRA") claim (Count II) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Id.* at ¶¶ 3-4.   Defendant's Motion has been fully briefed and is ripe for disposition.

1

I.      **Factual Background**

   **A.  Plaintiff's Allegations**

In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

Plaintiff was born on October 14, 1965.  Compl. ¶ 18, ECF No. 19.  Plaintiff was hired by Defendant, a railroad transportation company, in May of 2005.  *Id.* at ¶ 19.  On July 4, 2019, Plaintiff, who was 53 years old at the time, informed Defendant that he would be late for work. *Id.* at ¶ 20.  Upon arriving at work on July 4, 2019, Plaintiff was immediately sent for a drug and alcohol test before he had an opportunity to punch in or begin his shift.  *Id.* at ¶¶ 20; 22; 31.  When Plaintiff was sent for the test, Plaintiff was not so impaired as a result of alcohol and/or drug use that he was unable to fulfill his work duties.  *Id.* at ¶ 21.  Defendant's management was aware that Plaintiff had previously struggled with alcohol use, and, given Plaintiff's notice that he would be late on July 4, 2019, was further aware that there was a likelihood that he would fail an alcohol test if sent for such a test immediately upon arriving at work on July 4.  *Id.* at ¶ 25.  Plaintiff failed the alcohol test due to a finding of a minimal amount of alcohol in Plaintiff's system.  *Id.* at ¶ 26. Defendant subsequently terminated Plaintiff's employment.

At the time Plaintiff was fired, Defendant maintained a procedure that permitted an employee, including those under the age of 40, who had failed an alcohol test to take a 30-day leave from work to attend an alcohol treatment program and, following completion of the program, to return to work.  Compl. ¶ 27, ECF No. 19.  Plaintiff was not given an opportunity to complete such treatment and return to work following the July 4, 2019 failed test.  *Id.* at ¶ 28.  Further, Defendant maintained a practice of subjecting employees under the age of 40 to either: (1) random drug tests; or (2) drug/alcohol tests only after the employee was observed to be displaying signs

of alcohol consumption; and Defendant did not, as it did with Plaintiff, subject employees under the age of 40 to tests immediately upon their arrival at work and prior to the beginning of their shift.  *Id.* at ¶ 31.  With respect to Plaintiff's failed test, Plaintiff avers that Defendant utilized a method of alcohol testing that was inconsistent with prior practice "to catch the Plaintiff in some infraction to provide an excuse to fire the Plaintiff as part of the pretextual scheme to terminate Union Railroad employees over the age 40."  *Id.* at ¶ 24.

While Defendant cited its "demerits system" as the basis for termination at the time it terminated Plaintiff, Plaintiff claims that Defendant's purportedly discriminately applied alcohol test and subsequent discipline were the basis for his termination.  Compl. ¶ 32, ECF No. 19.  At the time of the alcohol infraction and in justifying Plaintiff's termination, Defendant retroactively applied demerits for a previous incident involving delegation of work in which the Plaintiff received a verbal warning, but no demerits.  *Id.* at ¶ 33.  With respect to employees under the age of 40, Defendant did not retroactively apply demerits that were not of record at the time of the employee's dismissal in terminating the employment of such younger employees.  *Id.* at ¶¶ 34-35. Plaintiff avers that approximately 90 of Defendant's former employees over the age of 40 have been fired by Defendant over the course of the last nine years, and that this number is, proportionately speaking, greatly in excess of the number of employees under 40 who have been separated from their employment with Defendant during the same timeframe.  *Id.* at ¶ 37.

Plaintiff filed a Charge of Discrimination for age discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 18, 2019, within 180 days of the termination of his employment, which Charge was dual filed with the Pennsylvania Human Relations Commission ("PHRC").  Compl. ¶ 9, ECF No. 19.  Plaintiff avers that the EEOC has

issued a Right to Sue letter to the Plaintiff, and that Plaintiff has filed this action with 90 days of the issuance of the Right to Sue letter. *Id.* at ¶ 10.

### B. Defendant's Allegations

Defendant asserts that the following additional facts alleged by Defendant are relevant to the Court's consideration of Defendant's Rule 12(b)(1) Motion:

Plaintiff, as a union member and employee of Defendant, was subject to "a comprehensive system addressing employee conduct, rules, policies, [] violations, and employee discipline and terminations." Br. in Supp. 6, ECF No. 21. "All such aspects of [Plaintiff's] employment, and the employment of other [Union Railroad] union employees, are addressed by, or inextricably intertwined with, a collective bargaining agreement and, inter alia, a complimentary demerits policy." *Id*. (emphasis omitted). Defendant avers that:

> As a railroad employee, [Plaintiff's] termination and related individual railroad employee disciplinary matters are subject to the [RLA], which, by its terms, precludes federal courts from exercising jurisdiction over these claims. The RLA provides for the statutory establishment of the National Railroad Adjustment Board ("NRAB") for purposes of "judicial review," 45 U.S.C. § 153, with arbitration to serve as the mechanism for the above-quoted, "orderly settlement of all disputes . . . ." 45 U.S.C. §§ 151a, 157. This extends to "disputes concerning . . . rules[] or working conditions." 45 U.S.C. § 151.

Br. in Supp. 1-2, ECF No. 21 (emphasis omitted).

Plaintiff's "URR Record of Discipline,"[1] which reflects Plaintiff's demerits and other discipline during his time as an employee of Defendant, indicates that 60 demerits were imposed against Plaintiff on August 1, 2019 for the July 4, 2019 failed alcohol test, pursuant to "URR General Rules 1.8, 1.8.1, 1.7, and 1.7.1"; and that 60 more demerits were imposed against Plaintiff on August 1, 2019 for insubordination and hostility with his supervisors during the July 4, 2019 incident, pursuant to "URR General Rule 1.2." Br. in Supp. 6-7, ECF No. 21. The Record of

---

[1] Attached as Exhibit 3 to Defendant's Motion.

Discipline further indicates that these two incidents resulted in the termination of Plaintiff's employment on August 1, 2019.  *Id*.

Defendant also sent correspondence to Plaintiff dated August 1, 2019 and August 2, 2019 (Exhibits 4 and 5 of Defendant's Motion) indicating that Plaintiff's employment with Defendant had been terminated as a result of 60 demerits each (for a total of 120 demerits) being imposed upon Plaintiff as a result of investigations confirming his failed alcohol test and subsequent insubordination on July 4, 2019.  Br. in Supp. 6-7, ECF No. 21.  The first letter indicates that, after imposition of the first 60 demerits for the failed alcohol test, Plaintiff had a total of 135 demerits, and that this total resulted in the termination of Plaintiff's employment under the Union Railroad Demerit Policy.  *Id.* at 7.[2]  The second letter indicates that, after imposition of the second 60 demerits for insubordination, Plaintiff had a total of 195 demerits, and that this total and the egregious nature of the incident resulted in the termination of Plaintiff's employment under the Union Railroad Demerit Policy.  *Id*.  Defendant asserts that:

> Pursuant to the RLA and the collective bargaining agreement and its import—which make arbitration proceedings before the NRAB the exclusive forum addressing [Plaintiff's] demerits, discipline, and termination—[Plaintiff] and his union representation initiated NRAB arbitration of [Plaintiff's] termination and discipline.  [Plaintiff] subsequently withdrew his arbitration claims immediately prior to a July 2021 hearing, presumably in light of his June 2021 filing of this federal lawsuit.

*Id*.

## II.    Procedural History

Plaintiff filed his Amended Complaint on September 24, 2021.  Defendant filed its Motion to Dismiss, along with a Brief in Support (ECF No. 21), on October 15, 2021.  Plaintiff filed a

---

[2] Defendant avers that, "[u]nder the URR Demerit Policy, exceeding 100 demerits presumptively results in termination of employment."  Br. in Supp. 7 n.5, ECF No. 21 (citing Mot. Ex. 2, ECF No. 20-4).

Brief in Opposition (ECF No. 26) on November 19, 2021, and Defendant filed a Reply (ECF No. 30) on December 1, 2021.

## III. Legal Standards

### A. Fed. R. Civ. P. 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the "court's 'very power to hear the case.'" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (quoting *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists. *Brown v. Tucci*, C.A. No. 12-1769, 2013 WL 2190145 (W.D. Pa. May 20, 2013) (citing *Development Finance Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995)).

There are two types of Rule 12(b)(1) motions. A "facial" attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action within the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). The United States Court of Appeals for the Third Circuit has explained:

> In reviewing a facial attack, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000)) (internal quotation marks omitted). Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party.

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

A "factual" attack, on the other hand, argues that, while the pleadings themselves facially establish jurisdiction, one or more of the factual allegations is untrue, causing the case to fall outside the court's jurisdiction. *Mortensen*, 549 F.2d at 891. In such a case, "no presumptive

truthfulness attaches to plaintiff's allegations" and the court must evaluate the merits of the disputed allegations because "the trial court's ... very power to hear the case" is at issue. *Id*. With a factual attack, the Court is free to consider evidence outside the pleadings and weigh that evidence. *Petruska*, 462 F.3d at 302 n.3; *see also Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Petruska*, 462 F.3d at 302 n.3 (quoting *Mortenson*, 549 F.2d at 891). Such inquiry is permissible because a federal court must assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in doing so. *See Boyle v. The Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (3d Cir. 1991) (citing *Mortensen*, 549 F.2d at 891).

### B. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.  Where a
> complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing

the sufficiency of a complaint must take three steps."  *Connelly v. Lane Constr. Corp.*, 809 F.3d

780, 787 (3d Cir. 2016).  The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."
> *Iqbal*, 556 U.S. at 675.  Second, it should identify allegations that, "because they
> are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at
> 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)
> ("Mere restatements of the elements of a claim are not entitled to the assumption of
> truth." (citation and editorial marks omitted)).  Finally, "[w]hen there are well-
> pleaded factual allegations, [the] court should assume their veracity and then
> determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556
> U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters

of public record, orders, exhibits attached to the complaint and items appearing in the record of

the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

When a document integral to or relied upon in the complaint is included, the court may also

8

consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)). "If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

IV.    **Discussion**

    A.  **Subject Matter Jurisdiction**

Defendant asserts that this Court lacks subject matter jurisdiction because the Railway Labor Act precludes and forecloses Plaintiff's ADEA and PHRA claims. Defendant asserts that mandatory arbitration before the NRAB is the exclusive forum for Plaintiff's claims. Br. in Supp. 8, ECF No. 21. As noted by Plaintiff and acknowledged by Defendant, this Court has recently rejected a similar, and in some respects, identical, argument that was raised in the matter of *Marsh v. Union R.R. Co., LLC., et. al.*, No. 2:20-cv-01145. In *Marsh*, the Court explained as follows:

> First, the Non-Labor Defendants argue that the RLA preempts and precludes[3] all claims against them and thus, we lack subject matter jurisdiction.

[3] In *Norris*, the Supreme Court noted that state-law claims that require interpretation of a CBA would be "pre-empted," while claims based on federal law would be "precluded," and stated that the principles governing both concepts are

They argue that pursuant to the Railway Labor Act, mandatory arbitration before the Railway Labor Board is the exclusive forum for Marsh's claims and, accordingly, federal and state courts lack jurisdiction over such claims. 45 U.S.C. § 151, *et seq.* We will deny the motion to dismiss in this regard.

In addition to the CBA (attached to motion as Exhibit 1, ECF No. 31-3), the Non-Union Defendants rely on the Railroad demerit policy (attached to motion as Exhibit 2, ECF No. 31-4). The demerit policy provides, inter alia, that for insubordination (first offense) a worker is subject to dismissal (ECF No. 31-4). Under the CBA, Marsh was provided an opportunity to have a formal investigation and to proceed to a grievance under the CBA. The Union Railroad Demerit Policy states it is "intended to provide a uniform structure to address rule and policy violations in a consistent and fair manner." (ECF No. 31-4 at 2). It provides:

> The Policy shall not serve to amend, replace or modify the terms of any existing Collective Bargaining Agreement and employees shall retain all rights currently afforded them under such agreements.

In *Int'l Ass'n of Machinists & Aerospace Workers Dist. Loc. Lodge 1776 v. Jackson*, No. CIV.A. 09-150, 2010 WL 597247, at *3 (E.D. Pa. Feb. 19, 2010) the court explained when the RLA preempts and precludes claims, noting that the one relevant scenario arises where there is a "minor dispute":

> "A minor dispute is a dispute over the interpretation or application of existing collective bargaining agreements." *United Transp. Union v. Conemaugh & Black Lick R.R. Co.*, 894 F.2d 623, 628 (3d Cir.1990). A claim is a minor dispute if it, "implicate[s] practices, procedures, implied authority, or codes of conduct that are part of the working relationship." *Fry v. Airline Pilots Ass'n., Intern.*, 88 F.3d 831, 836 (10th Cir.1996).

> Importantly, and for purposes of the motion before this Court, minor disputes must be kept out of the courts and under the exclusive jurisdiction of an arbitration board. *See Independent Ass'n. of Continental Pilots*, 155 F.3d at 691 (citing *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 94, 99 S.Ct. 399, 58 L.Ed.2d 354 (1978)). When a claim is "inextricably intertwined" or "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract," the claim is preempted. *Wall v. Americold Corp.*, 1997 WL 431006, at *2 (E.D. Pa. July 15, 1997)

the same. 512 U.S. at 259, n.6. Federal courts have used the terms "preclusion" and "preemption" interchangeably and likewise equated the two concepts. Preclusion and preemption are based on the same idea -- that federal labor law should control the issues in a case that requires interpreting a CBA -- but the former affects federal statutes while the latter affects state statutes. *See Sturge v. Northwest Airlines, Inc.*, 658 F.3d 832, 2011 WL 4634223, *8 (8th Cir. Oct. 7, 2011); *Brown v. Ill. Cent. R.R.*, 254 F.3d 654, 664 (7th Cir. 2001), *cert. denied*, 534 U.S. 1041 (2001)

(citing *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 & 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)).

2010 WL 597247 at *3; *see also Int'l Ass'n of Machinists and Aerospace Workers Dist. Local Lodge 1776 v. Jackson,* No. 09-150, 2010 WL 597247 at *3 (E.D. Pa. Feb. 19, 2010). Claims must be dismissed if they require "an examination into, and interpretation of, the terms of the [CBA] between [a plaintiff's] Union and the [employer]." *Malobabich v. Norfolk S. Corp*., No. 2:11-CV-112, 2011 WL 1791306, at *2 (W.D. Pa. May 10, 2011) (quoting *Blackwell v. Am. Airlines, Inc*., No. 98 C 6856, 2003 WL 22159412, at *2 (N.D. Ill. Sept. 17, 2003)).

Plaintiff here claims that the Defendants' actions had discriminatory or retaliatory motives; Non-Labor Defendants argue his claims were inextricably intertwined with, and substantially dependent upon analysis of the CBA, and therefore, this court lacks subject matter jurisdiction.  The central case relied upon by the Non-Labor Defendants is *Malobabich*.  In that case, Plaintiff's complaint alleged violations of the ADEA, a parallel age discrimination claim under the Pennsylvania Human Relations Act, and the tort of intentional infliction of emotional distress.  Defendant employer filed a motion to dismiss, which the court granted on the grounds of lack of subject matter jurisdiction:

> As an initial matter, the Court must ensure that it may exercise subject-matter jurisdiction.  In this case, the jurisdictional analysis requires harmonization of two federal statutes.  The ADEA, 29 U.S.C. § 626(c)(1), provides that individuals who allege age discrimination may bring an action in federal court to obtain legal or equitable relief. On the other hand, the Railway Labor Act ("RLA"), 45 U.S.C. § 151a et seq., establishes arbitration boards which have exclusive jurisdiction to resolve disputes over the interpretation or application of CBAs in the railroad industry.

> In determining whether subject-matter jurisdiction exists, the Court is not limited to the allegations of the Complaint. Rather, the Court may also consider extraneous evidence submitted by the parties. *Blackwell v. American Airlines, Inc.*, 2003 WL 22159412 *2 (N.D. Ill.2003) (citations omitted).  Accordingly, the Court takes judicial notice of the existence of the CBA between NS and the Union, and the seniority rules contained therein.   Notably, Malobabich has not challenged the authenticity of the CBA, and indeed, counsel for Plaintiff has explained that he "is not alleging that Defendant violated the CBA."

*Id*., 2011 WL 1791306, at *1.   The court, adopting a broader preemption/preclusion rule, found it lacked jurisdiction, noting:

The age discrimination claims are not wholly independent from the CBA. Malobabich was hired as a 56–year–old student electrician and he does not dispute that the younger electricians had more seniority. His claim is adverse to the CBA seniority rights of his coworkers. *Malobabich is not challenging the motives of NS, but instead, he facially challenges the CBA seniority rules as violative of the ADEA.* In other words, he contends that NS committed age discrimination because it abided by the CBA seniority rules. Clearly, this dispute is inextricably intertwined with and requires interpretation of the CBA.

In addition, Congress has recognized that Malobabich's ADEA claim must be analyzed in conjunction with the CBA. Pursuant to the ADEA, 29 U.S.C. § 623(f)(2)(A): "It shall not be unlawful for an employer . . . to observe the terms of a bona fide seniority system that is not intended to evade the purposes of this chapter." This provision not only casts doubt on whether Malobabich can ultimately succeed on the merits of his claims, it also reflects the intent of Congress that his age discrimination claim be evaluated in the context of the seniority rules set forth in the CBA which is governed by the RLA. In *Brown*, 254 F.3d at 668, the United States Court of Appeals for the Seventh Circuit held that ADA claims were precluded because interpretation of the CBA seniority provisions could conclusively dispose of the claim. In sum, the Court concludes that it lacks subject-matter jurisdiction over this case.

*Id.*, 2011 WL 1791306, at *3 (citing *Brown v. Illinois Central R.R.*, 254 F.3d 654 (7th Cir. 2001) (emphasis added).

Yet the allegations in *Malobabich* differ from those in the Amended Complaint. Here, Marsh takes issue with the demerits that were assessed and maintained against him under the CBA and the Railroad's disciplinary rules and policies, as well as his termination, but his central claim is this was part of a pretextual scheme to terminate Railroad employees over age 40 on the basis of their age in violation of the ADEA. The motives of the Railroad are challenged. Given the nature of his claims herein, we will deny the motion to dismiss on the grounds of preemption.

Other courts have so held. Recently, in *Andre Fields, et al. v. American Airlines, Inc., et al.*, No. CV 19-903-KSM, 2021 WL 4306021, at *21 (E.D. Pa. Sept. 22, 2021), the court rejected the argument that the [p]laintiffs' disparate treatment and retaliation claims (racial discrimination) were minor disputes under the RLA:

> "[T]he [United States Supreme] Court has consistently held that the RLA minor dispute resolution machinery does not displace separate federal statutory rights granted to individual workers." *Blakely v. U.S. Airways, Inc*., 23 F. Supp. 2d 560, 568 (E.D. Pa. 1998) (discussing Supreme Court cases and holding that the RLA did not strip the court of jurisdiction to consider union members' ADA claims); *id*. at 574 ("The overwhelming majority of the courts of appeal have determined that employees covered by CBAs containing mandatory arbitration clauses retain the right to pursue statutory employment discrimination claims in federal court regardless of whether the employee has exhausted his or her contractual remedy.")

Although Plaintiff has alleged a discriminatory scheme amongst defendants, which the court finds are conclusory and lacking in sufficient particularity, the overall harm complained of pertains to his wrongful termination and involves rights or obligations that exist independently of the CBA.

> Accordingly, the motion to dismiss the ADEA claim on the grounds of preclusion by the RLA pursuant to Federal Rule of Civil Procedure 12 (b)(1) will be denied.

*Marsh v. Union R.R. Co., LLC.*, No. 2:20-cv-01145-RJC, 2021 WL 4459764, at *10-12 (W.D. Pa. Sept. 29, 2021).

Similar to the *Marsh* action, Plaintiff in this action takes issue with the demerits that were imposed upon him and the manner in which the alcohol test and subsequent disciplinary process played out, including his termination, but his central claim is that the same was a pretextual scheme to terminate Plaintiff on the basis of his age in violation of the ADEA. Plaintiff has alleged that Defendant had a discriminatory motive in applying its policies in a less favorable manner to Plaintiff as compared to younger employees. *See Markovich v. Union R.R. Co., LLC*, No. 2:21-cv-1596, 2022 WL 3334278, at *5 (W.D. Pa. June 8, 2022), *report and recommendation adopted in part, rejected in part*, No. 2:21-cv-1596, 2022 WL 2980548 (W.D. Pa. July 28, 2022). As in *Marsh*, the motives of the Defendant are at issue in this case. As a defendant in the *Marsh* action, Union Railroad is familiar with the Court's analysis and holding in that case on the issue of RLA

preclusion.  While the Court recognizes that Defendant may disagree with the Court's holding in *Marsh*, the Court finds that, at least with respect to the issue of preclusion, Defendant's argument can be rejected on the same basis relied upon by the Court in *Marsh*, especially where Defendant does not attempt to distinguish the *Marsh* preclusion holding from the instant matter in any manner.  The Court will deny the Motion to Dismiss to the extent it asserts that this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) on the basis of a lack of subject matter jurisdiction.

### B.  Failure to State a Claim

Defendant also seeks dismissal of Plaintiff's claims on the basis that Plaintiff has failed to allege facts sufficient to state a claim under the ADEA or PHRA that is plausible on its face.  The Court agrees with this assertion.

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  Age discrimination claims in which the plaintiff relies on circumstantial evidence proceed according to the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (reaffirming the application of a "slightly modified version of [*McDonnell Douglas*] in ADEA cases").  Under the *McDonnell Douglas* framework:

> a plaintiff must first establish a prima facie case of discrimination.  If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  The burden then shifts back to the plaintiff to

prove, by a preponderance of the evidence, that the articulated reason was a mere
pretext for discrimination.

*Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (internal citations omitted).

Under this framework, the plaintiff must first establish a prima facie case of discrimination.

*Keller*, 130 F.3d at 1108 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742,

125 L.Ed.2d 407 (1993)).  Satisfying the prima facie elements creates an "inference of unlawful

discrimination."  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999) (quoting

*Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir.1995)).  The elements of a prima facie case

of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered

an adverse employment decision; (3) the plaintiff was qualified for the position in question; and

(4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as

to support an inference of a discriminatory motive.[4]  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d

Cir. 2013).  The Third Circuit has explained

> If the plaintiff offers sufficient proof of these elements, step two is reached.  The
> burden of production (but not the burden of persuasion) shifts to the defendant, who
> must then offer evidence that is sufficient, if believed, to support a finding that it
> had a legitimate, nondiscriminatory reason for the discharge.  *Hicks*, 509 U.S. at
> 506–07, 113 S.Ct. at 2746–47.  If the defendant cannot satisfy this burden,

---

[4] With respect to the fourth element, the Third Circuit has explained:

> We have sometimes phrased the fourth element as requiring the plaintiff to show that she "was
> ultimately replaced by another employee who was sufficiently younger so as to support an inference
> of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644
> (3d Cir. 2015).  The *Willis* formulation can be traced back to a case in which we held that "an ADEA
> plaintiff may establish the fourth element of the *McDonnell Douglas* test for a prima facie case by
> showing that s/he was replaced by a person sufficiently younger to permit an inference of age
> discrimination*." Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793 (3d Cir. 1985).  This is just one way
> to establish the fourth element.  A plaintiff may also establish the fourth element with proof that,
> during a reduction in force, younger employees were retained when plaintiff was fired, *Showalter
> v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234-36 (3d Cir. 1999), or with other facts sufficient
> "to create an inference that an employment decision was based on" age, [*O'Connor v. Consol. Coin
> Caterers Corp.*, 517 U.S. 308, 312 (1996)].

*Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 n.3 (3d Cir. 2019).  The *Dodson* Court described the fourth
element as follows: "the adverse action occurred under circumstances that create an inference that plaintiff's age was
a motivating factor."  *Id.* at 80.

judgment must be entered for the plaintiff. *Id.* at 509, 113 S.Ct. at 2748. On the other hand, if the defendant does satisfy this burden, step three is reached. The plaintiff may then survive summary judgment or judgment as a matter of law by submitting evidence

> from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Keller*, 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)).

It is important to note, and as succinctly and deftly explained by the Honorable Patricia L. Dodge:

> Further, the Third Circuit has stated that, in order to defeat a motion to dismiss, it is sufficient, but not necessary, to allege a prima facie case of discrimination. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement."); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (plaintiff's allegations that she was the only female truck driver and was qualified but only six male truck drivers were recalled was sufficient to withstand a motion to dismiss, noting that she was not required "to establish a prima facie case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings.")

*Markovich*, 2022 WL 3334278, at *6. However, the Court will use the elements of a prima facie claim for ADEA discrimination as a guideline in evaluating the claim at this stage. *See Dreibelbis v. County of Berks*, 2020 WL 605884 at *7 (E.D. Pa. Feb. 7, 2020).

To succeed on a disparate treatment claim, a plaintiff must demonstrate that "the employee's protected trait actually played a role" and "had a determinative influence on the outcome" of the decision-making process that led to the challenged action. *Hazen Paper v. Biggins*, 507 U.S. 604, 610 (1993); *see also* 29 U.S.C. § 623(a) ("It shall be unlawful for an employer . . . [to] discriminate against any individual . . . *because of* such individual's age . . . ."

(emphasis added)).  In other words, age must have been a "but-for" cause of the action, and the plaintiff bears the burden of proving so.  *Gross*, 557 U.S. at 177, 180.  Accordingly, "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."  *Hazen Paper*, 507 U.S. at 609.

In support of his ADEA claim, Plaintiff asserts that Plaintiff was subjected to disparate treatment because younger employees suspected of alcohol consumption were not tested for alcohol prior to beginning their shifts, as Plaintiff was in this case.  In so asserting, Plaintiff alleges that an alcohol test was performed earlier than would normally be the case, and that this test ultimately resulted in the termination of Plaintiff's employment.  Even viewing the allegations in the Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff fails to set forth allegations sufficient to support any inference that the manner in which the alcohol test was applied resulted in Plaintiff's termination, or that his age played any role in either the application of an early test or his termination for failing the test.[5]

To be sure, Plaintiff alleges that he could fulfill his job duties and that he failed the test as a result of the detection of a minimal amount of alcohol in his system, but this does not permit a logical inference that Plaintiff would have passed the alcohol test had he been permitted to first begin his shift.  Plaintiff does not allege that employees were permitted to have alcohol in their system while working for Defendant.  Nor does he allege that Defendant cannot require an employee to undergo an alcohol test if Defendant suspects that the employee is intoxicated.

---

[5] The Court ignores, at this stage, the logical danger that might result should an employer, and particularly a railroad, be required to wait, in all instances, for an employee who the employer believes has consumed alcohol to begin performing the employee's duties before requiring the employee to undergo an alcohol test, especially where Plaintiff himself alleges that Defendant's management was aware that Plaintiff had previously struggled with alcohol use, and, given Plaintiff's notice that he would be late on July 4, 2019, *was further aware that there was a likelihood that Plaintiff would fail an alcohol test* if sent for such a test immediately upon arriving at work on July 4, Compl. ¶ 25, ECF No. 19.  Plaintiff has alleged that Defendant maintained such a policy, and the Court must accept that allegation as true.

Plaintiff fails to allege any fact to support an inference that the timing of the test, which Plaintiff avers resulted in his termination due to discriminatory application, had anything to do with the termination of his employment with Defendant.[6]  As alleged, Plaintiff has averred that Defendant suspected that Plaintiff had been drinking, that Defendant subjected him to an alcohol test, and that Plaintiff, in fact, failed the test.  The Court finds that Plaintiff fails to provide the Court with sufficiently specific allegations that would support an inference that age had anything to do with the application of the test, a departure from normal procedures, or Plaintiff's termination.  Plaintiff further fails to allege that Plaintiff would have avoided or otherwise not failed the alcohol test in the absence of a departure from typical procedures.  With respect to the application of an alcohol test before Plaintiff began his shift, the Court finds that Plaintiff has not alleged any non-conclusory facts sufficient to raise a reasonable expectation that discovery will reveal evidence that Plaintiff's age motivated Defendant's decision to terminate him.  Rather, the facts, as pled, indicate that Plaintiff's consumption of alcohol on the day in question, and Defendant's suspicion of alcohol consumption based upon its knowledge of Plaintiff's history, resulted in his termination.

Plaintiff also alleges that Defendant maintained a procedure that permitted an employee, including those under the age of 40, who had failed an alcohol test to take a 30-day leave from work to attend an alcohol treatment program and, following completion of the program, to return to work, Compl. ¶ 27, ECF No. 19, and that Plaintiff was not given an opportunity to complete such treatment and return to work following the July 4, 2019 failed test, *id.* at ¶ 28.  He asserts that Defendant's failure to offer Plaintiff the opportunity to attend treatment was a part of Defendant's scheme to terminate the Plaintiff based upon his age, and avers that he was treated differently than

---

[6] It also bears noting that Plaintiff has alleged that he arrived late for his shift on the day in question.  Compl. ¶ 20, ECF No. 19.

18

younger employees in that younger employees who tested positive for drugs or alcohol were given the opportunity to attend treatment and then return to work. *Id.* at ¶¶ 29-30.

While perhaps a closer call than Plaintiff's other allegations, the Court finds that Plaintiff's assertions as to Defendant's immediate termination of Plaintiff's employment and failure to allow Plaintiff to attend treatment come up short of stating a plausible claim at this juncture. While Plaintiff avers in conclusory fashion that younger employees were permitted to utilize this alcohol treatment procedure, Plaintiff provides very little outside of speculative averments of disparate treatment and fails to provide any specific facts about the alcohol treatment procedure itself. For example, Plaintiff does not set forth any allegations as to whether the procedure was part of a formal written policy, whether the procedure was mandatory[7] or discretionary, and/or the regularity with which the procedure was applied. For these reasons, the Court finds that Plaintiff's allegations respecting Defendant's failure to provide Plaintiff with an opportunity to attend treatment are similar to those that this Court has previously found to be speculative and lacking the requisite particularity under *Twombly* and *Iqbal*.

Finally, Plaintiff alleges that Defendant retroactively applied demerits to Plaintiff in terminating Plaintiff's employment, and that the same would not have happened to a younger employee. With respect to this assertion, Plaintiff fails to provide sufficient, non-conclusory allegations as to the nature of the previous incident, the number demerits eventually imposed, the manner in which the demerits were imposed, how Plaintiff learned of these additional demerits, and/or how the imposition of these demerits resulted in his termination. Plaintiff's allegations

---

[7] If the procedure was maintained as a formal, written, mandatory policy, the Court is hard-pressed to imagine how it could have jurisdiction over such a claim. The same would require only interpretation of the CBA to determine whether Defendant complied with its mandatory policy.

regarding the retroactive imposition of demerits are vague and conclusory, and come up short of stating a claim for age discrimination.

Turning to Plaintiff's PHRA claim, the Court notes that the elements of a prima facie case of age discrimination are the same under both the ADEA and the PHRA.  *Dodson*, 773 F. App'x at 80.  The PHRA provides: "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to otherwise discriminat[e] against such individual ... with respect to compensation, hire, tenure . . . if the individual . . . is the best able and most competent to perform the services required."  43 Pa. Stat. Ann. § 955(a).  To prevail on a claim of intentional discrimination under the ADEA or the PHRA, "a plaintiff must show that his or her age 'actually motivated' or 'had a determinative influence on' the employer's decision to fire him or her.'" *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (quotations omitted). "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005). Because this Court has already found that Plaintiff fails to state an ADEA claim, the Court likewise finds that he fails to state a claim under the PHRA.

While the Court will dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim, the Court will, in an abundance of caution, permit Plaintiff to file a second amended complaint with respect to his ADEA and PHRA claims.

## V.    Conclusion

For the reasons discussed above, the Court will deny Defendant's Motion to Dismiss to the extent that it asserts that this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  The Court will grant the Motion to Dismiss to the extent that it asserts that Plaintiff fails to state a claim under the ADEA or the PHRA.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 14, 2022

cc: All counsel of record