IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT MCCRUMB, | ) |
| | ) No. 2:21-cv-718 |
| Plaintiff, | ) |
| | ) |
| vs. | ) Judge Robert J. Colville |
| | ) |
| UNION RAILROAD COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 40) filed by Defendant Union Railroad Company, LLC. In this case, Plaintiff Scott McCrumb alleges that Defendant, his former employer, targeted and improperly terminated Plaintiff on the basis of his age in an effort to "weed out" employees over the age of 40. Defendant seeks dismissal with prejudice of Plaintiff's Age Discrimination in Employment Act ("ADEA") claim (Count I) and Pennsylvania Human Relations Act ("PHRA") claim (Count II) in the operative Second Amended Complaint (ECF No. 37) (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6). Mot. at ¶¶ 1-5, ECF No. 40. Defendant's Motion has been fully briefed and is ripe for disposition.

**I.      Background**

On September 14, 2022, this Court entered a Memorandum Opinion and Order (ECF Nos. 31 and 32) granting Defendant's previous Motion to Dismiss (ECF No. 20) and dismissing Plaintiff's Amended Complaint (ECF No. 19) without prejudice on the basis that the Amended Complaint failed to state a claim under the ADEA or the PHRA. Because the Second Amended

1

Complaint is very similar to the Amended Complaint,[1] the Court borrows heavily from its previous description of the factual allegations set forth in this case in the Court's prior Memorandum Opinion, and supplements that description where appropriate:

Plaintiff was born on October 14, 1965. Compl. ¶ 18, ECF No. 37. Plaintiff was hired by Defendant, a railroad transportation company, in May of 2005. *Id.* at ¶ 19. On July 4, 2019, Plaintiff, who was 53 years old at the time, informed Defendant that he would be late for work. *Id.* at ¶ 20. Upon arriving at work on July 4, 2019, Plaintiff was immediately sent for a drug and alcohol test before he had an opportunity to punch in or begin his shift. *Id.* at ¶¶ 20; 22. When Plaintiff was sent for the test, Plaintiff was not so impaired as a result of alcohol and/or drug use that he was unable to fulfill his work duties. *Id.* at ¶ 21. Defendant's management was aware that Plaintiff had previously struggled with alcohol use, and, given Plaintiff's notice that he would be late on July 4, 2019, was further aware that there was a likelihood that he would fail an alcohol test if sent for such a test immediately upon arriving at work on July 4. *Id.* at ¶ 25. Plaintiff failed the alcohol test due to a finding of a minimal amount of alcohol in Plaintiff's system. *Id.* at ¶ 26. Defendant subsequently terminated Plaintiff's employment.

At the time Plaintiff was fired, Defendant maintained a procedure that permitted an employee, including those under the age of 40, who had failed an alcohol test to take a 30-day leave from work to attend an alcohol treatment program and, following completion of the program, to return to work with a "last chance" notice.[2] Compl. ¶ 27, ECF No. 37. Plaintiff was not given

---

[1] Plaintiff has added a total of four new paragraphs and six subparagraphs to the Complaint, as well as some modification to previous paragraphs to add allegations respecting "last chance" notices. The subparagraphs to paragraph 40 constitute the primary substantive distinction between the two complaints. In those subparagraphs, Plaintiff sets forth allegations regarding six other allegedly younger employees of Defendant that allegedly received different discipline than Plaintiff for various incidents, as described in further detail below. *See* Compl. ¶ 40, ECF No. 37.

[2] "The 'last chance' notice means that the next infraction will result in termination." Compl. ¶ 28, ECF No. 37.

an opportunity to complete such treatment and to return to work and was not given a "last chance" notice following the July 4, 2019 failed test. *Id.* at ¶¶ 29; 30.  Further, Defendant maintained a practice of subjecting employees under the age of 40 to either: (1) random drug tests or (2) drug/alcohol tests only after the employee was observed to be displaying signs of alcohol consumption; and Defendant did not, as it did with Plaintiff, subject employees under the age of 40 to tests immediately upon their arrival at work and prior to the beginning of their shift. *Id.* at ¶ 33.  With respect to Plaintiff's failed test, Plaintiff avers that Defendant utilized a method of alcohol testing that was inconsistent with prior practice "to catch the Plaintiff in some infraction to provide an excuse to fire the Plaintiff as part of the pretextual scheme to terminate Union Railroad employees over the age 40." *Id.* at ¶ 24.

While Defendant cited its "demerits system" as the basis for termination at the time it terminated Plaintiff, Plaintiff claims that Defendant's purportedly discriminatorily applied alcohol test and discriminatory discipline were the basis for his termination.  Compl. ¶ 34, ECF No. 37. At the time of the alcohol infraction and in justifying Plaintiff's termination, Defendant retroactively applied demerits for a previous incident involving delegation of work in which the Plaintiff received a verbal warning, but no demerits. *Id.* at ¶ 35.  With respect to employees under the age of 40, Defendant did not retroactively apply, and had never retroactively applied, demerits that were not of record at the time of the employee's dismissal in terminating the employment of such younger employees. *Id.* at ¶¶ 36-38.  Plaintiff offers the following by way of "[o]ther examples of disparate treatment of Plaintiff as compared to employees younger than Plaintiff":

> (a) Doug Stroup, approximately 12 years younger than Plaintiff, tested positive for alcohol while at work.  Like Plaintiff, Mr. Stroup's failed test pushed him over the threshold of 100 demerits.  Rather than terminate Mr. Stroup, Defendant granted him 30 days leave to attend a drug and alcohol rehabilitation program.  Defendant gave him a "last chance" notice.

3

> (b) Defendant also provided a "last chance" notice to Mr. Steve Linn. Mr. Linn is in his late 20's or early 30's, and Mr. Linn was caught fighting at work, which is grounds for termination. Defendant gave him a "last chance" notice. Further, after Defendant fired Mr. Linn for violating the "last chance" notice, Defendant then rehired him.
>
> (c) Defendant issued a "last chance" notice to another employee in his late 20's or early 30's, Mr. Nate Champion. Defendant issued Mr. Champion demerits in excess of 100 for repeated "no shows" at work. Despite this, Mr. Champion received a "last chance" notice.
>
> (d) Similarly, Mr. Joe Coyle, an employee in his mid-20s, received 100 demerits for repeated safety violations. Again, Defendant provided Mr. Coyle with a "last chance" notice.
>
> (e) Defendant issued demerits to Mr. Robert Richel for possessing a firearm in his truck while on a work site, which is grounds for termination, but Defendant[] issued a "last chance" notice to Mr. Richel. Mr. Richel is approximately 15 years younger [than Plaintiff].
>
> (f) Similarly, William Blackburn, an employee in his mid-30s, exceeded 100 demerits for repeated safety violations. Defendant fired Blackburn, but then rehired him.

*Id.* at ¶ 40. Plaintiff avers that approximately 90 of Defendant's former employees over the age of 40 have been fired by Defendant over the course of the last nine years, and that this number is, proportionately speaking, greatly in excess of the number of employees under 40 who have been separated from their employment with Defendant during the same timeframe. *Id.* at ¶ 41.

Plaintiff filed a Charge of Discrimination for age discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 18, 2019, within 180 days of the termination of his employment, which Charge was dual filed with the Pennsylvania Human Relations Commission ("PHRC"). Compl. ¶ 9, ECF No. 37. Plaintiff avers that the EEOC has issued a Right to Sue letter to the Plaintiff, and that Plaintiff filed this action with 90 days of the issuance of the Right to Sue letter. *Id.* at ¶ 10.

Plaintiff filed the Complaint on October 25, 2022.  Defendant filed its most recent Motion to Dismiss, along with a Brief in Support (ECF No. 41), on November 21, 2022.  Plaintiff filed his Brief in Opposition (ECF No. 42) on December 9, 2022, and Defendant filed a Reply on December 16, 2022.

## II.     Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it

5

"stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d

6

900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)). "If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### III. Discussion

Defendant seeks dismissal of Plaintiff's claims on the basis that Plaintiff has purportedly failed to allege facts sufficient to state a claim under the ADEA or PHRA. It bears noting that, in arguing for dismissal, Defendant sets forth a number of factual averments that are well outside (and/or directly contradictory to) the facts alleged by Plaintiff in the four corners of the Complaint. For example, Defendant speaks to: Independence Day as a holiday that is frequently associated with alcohol consumption; Plaintiff's supervisor's alleged observations of Plaintiff on the day in question; Plaintiff's alleged statements prior to being given the alcohol test; the results of the alcohol test; and facts about the six individuals Plaintiff asserts were treated differently when they allegedly committed similar infractions. None of these averments are appropriate for consideration at this stage of the proceedings, and the Court believes that Defendant's insistence on combatting the factual allegations in Plaintiff's Complaint with contradictory assertions of fact amounts to a tacit acknowledgement that the Complaint presents issues that are more appropriate for consideration at the summary judgment stage.

Turning to Plaintiff's claims, the ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To succeed on an ADEA claim, a plaintiff must establish, by a preponderance of the evidence, that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin.*

*Servs., Inc.*, 557 U.S. 167, 177–78 (2009).  Age discrimination claims in which the plaintiff relies on circumstantial evidence proceed according to the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).  Under the *McDonnell Douglas* framework:

> a plaintiff must first establish a prima facie case of discrimination.  If the plaintiff succeeds, the defendant must articulate a legitimate, non-discriminatory reason for the adverse employment action.  The burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the articulated reason was a mere pretext for discrimination.

*Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (internal citations omitted).

Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Keller*, 130 F.3d at 1108 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  Satisfying the prima facie elements creates an "inference of unlawful discrimination."  *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999) (quoting *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir.1995)).  The elements of a prima facie case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.[3]  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  The Third Circuit has explained:

---

[3] With respect to the fourth element, the Third Circuit has explained:

> We have sometimes phrased the fourth element as requiring the plaintiff to show that she "was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive."  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).  The *Willis* formulation can be traced back to a case in which we held that "an ADEA plaintiff may establish the fourth element of the *McDonnell Douglas* test for a prima facie case by showing that s/he was replaced by a person sufficiently younger to permit an inference of age discrimination."  *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 793 (3d Cir. 1985).  This is just one way to establish the fourth element.  A plaintiff may also establish the fourth element with proof that,

8

> If the plaintiff offers sufficient proof of these elements, step two is reached. The burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge. *Hicks*, 509 U.S. at 506–07, 113 S.Ct. at 2746–47. If the defendant cannot satisfy this burden, judgment must be entered for the plaintiff. *Id.* at 509, 113 S.Ct. at 2748. On the other hand, if the defendant does satisfy this burden, step three is reached. The plaintiff may then survive summary judgment or judgment as a matter of law by submitting evidence
>
>> from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Keller*, 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994)). With respect to evidence that could allow a factfinder to reasonably believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions, the Third Circuit has explained that "[p]ointing to evidence demonstrating any of the following satisfies this second way to prove pretext: (1) the defendant previously discriminated against the plaintiff; (2) the defendant discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated, substantially younger individuals more favorably." *Willis*, 808 F.3d at 645.

It is important to note, and as succinctly and deftly explained by the Honorable Patricia L. Dodge:

---

> during a reduction in force, younger employees were retained when plaintiff was fired, *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234-36 (3d Cir. 1999), or with other facts sufficient "to create an inference that an employment decision was based on" age, [*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)].

*Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 n.3 (3d Cir. 2019). The *Dodson* Court described the fourth element as follows: "the adverse action occurred under circumstances that create an inference that plaintiff's age was a motivating factor." *Id.* at 80.
  The Court notes that it is, quite frankly, not clear whether Defendant attempts in its briefing to argue that Plaintiff *must* plead that he was replaced by a younger individual. Such an argument would be contrary to Third Circuit precedent, and the Court will thus disregard any such argument to the extent it is being advanced.

9

> Further, the Third Circuit has stated that, in order to defeat a motion to dismiss, it is sufficient, but not necessary, to allege a prima facie case of discrimination. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Id.* (citation omitted). *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (establishing a prima facie case is an "evidentiary standard, not a pleading requirement."); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (plaintiff's allegations that she was the only female truck driver and was qualified but only six male truck drivers were recalled was sufficient to withstand a motion to dismiss, noting that she was not required "to establish a prima facie case, much less to engage in the sort of burden-shifting rebuttal that *McDonnell Douglas* requires at a later stage in the proceedings.")

*Markovich*, 2022 WL 3334278, at *6. However, the Court will use the elements of a prima facie claim for ADEA discrimination as a guideline in evaluating the claim at this stage. *See Dreibelbis v. County of Berks*, 2020 WL 605884 at *7 (E.D. Pa. Feb. 7, 2020).

To succeed on a disparate treatment claim, a plaintiff must demonstrate that "the employee's protected trait actually played a role" and "had a determinative influence on the outcome" of the decision-making process that led to the challenged action. *Hazen Paper v. Biggins*, 507 U.S. 604, 610 (1993); *see also* 29 U.S.C. § 623(a) ("It shall be unlawful for an employer . . . [to] discriminate against any individual . . . *because of* such individual's age . . . ." (emphasis added)). In other words, age must have been a "but-for" cause of the action, and the plaintiff bears the burden of proving so. *Gross*, 557 U.S. at 177, 180. Accordingly, "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Hazen Paper*, 507 U.S. at 609.

Defendant's consistent focus on the reasonableness of its actions in terminating Plaintiff's employment following his failed alcohol test, in this Court's estimation, fails to appreciate that Plaintiff has, at least tacitly, acknowledged that Defendant possessed a legitimate, non-discriminatory reason (the failed alcohol test) for terminating Plaintiff. *See* Br. in Opp'n 3, ECF

No. 42 (Plaintiff arguing that he has pled sufficient facts proving that Defendant considered Plaintiff's age when it terminated him, and that *Plaintiff has pled sufficient facts demonstrating pretext*). Plaintiff need merely articulate facts sufficient to plausibly allege that the non-discriminatory reason was pretext for age discrimination. Defendant's repeated assertion that it possessed, and Plaintiff admitted that Defendant possessed, a legitimate, non-discriminatory basis for terminating Plaintiff's employment is a red herring, as the issue before the Court, at this stage, is whether the facts alleged by Plaintiff could plausibly support a finding that Plaintiff's age, rather than the failed alcohol test, was more likely than not a motivating or determinative cause of Defendant's termination of Plaintiff's employment. Defendant's argument respecting the reasonableness of its actions goes to pretext. Of course, whether Defendant's decision to fire Plaintiff, as opposed to other apparently available options as alleged in Plaintiff's Complaint, was *reasonable* is not an issue the Court can resolve on the pleadings.

While the changes that Plaintiff has made to the Complaint since his previous pleading are not substantial, the Court is satisfied that both of Plaintiff's claims are now sufficiently pled to proceed to the next stage of litigation. As the Court will explain below, it finds that certain theories that Plaintiff may or may not intend to pursue are not sufficient to state a claim, and Plaintiff will not be permitted to pursue such theories, given previous opportunities to amend. That said, Plaintiff has alleged sufficient facts to survive Defendant's Motion to Dismiss.

Initially, Plaintiff has again alleged facts that would tend to support an argument that younger employees suspected of alcohol consumption were not tested for alcohol prior to beginning their shifts, as Plaintiff was in this case. In so asserting, Plaintiff again alleges that an alcohol test was performed earlier than would normally be the case, and that this test ultimately resulted in the termination of Plaintiff's employment. Even viewing the allegations in the

Complaint in a light most favorable to Plaintiff, the Court again finds that Plaintiff fails to set forth allegations sufficient to support any inference that the *manner in which* the alcohol test was applied resulted in Plaintiff's termination, or that his age played any role in the application of an early test.[4]

To be sure, Plaintiff alleges that he could fulfill his job duties and that he failed the test as a result of the detection of a minimal amount of alcohol in his system, but this does not permit a logical inference that Plaintiff would have passed the alcohol test had he been permitted to first begin his shift. Plaintiff does not allege that employees were permitted to have alcohol in their system while working for Defendant. Nor does he allege that Defendant cannot require an employee to undergo an alcohol test if Defendant suspects that the employee has consumed alcohol. In short, Plaintiff fails to allege any fact to support an inference that the *timing* of the test, which Plaintiff avers resulted in his termination due to discriminatory application, had anything to do with the termination of his employment with Defendant.[5] As alleged, Plaintiff has averred that Defendant suspected that Plaintiff had been drinking, that Defendant subjected him to an alcohol test, and that Plaintiff, in fact, failed the test. The Court finds that Plaintiff fails to provide the Court with sufficiently specific allegations that would support an inference that age had anything to do with the application or timing of the alcohol test. Plaintiff further fails to allege that Plaintiff would have avoided or otherwise not failed the alcohol test in the absence of a departure from

---

[4] As it did in its previous Memorandum Opinion, the Court again ignores, at this stage, the logical danger that might result should an employer, and particularly a railroad, be required to wait, in all instances, for an employee who the employer believes has consumed alcohol to begin performing the employee's duties before requiring the employee to undergo an alcohol test, especially where Plaintiff himself alleges that Defendant's management was aware that Plaintiff had previously struggled with alcohol use, and, given Plaintiff's notice that he would be late on July 4, 2019, *was further aware that there was a likelihood that Plaintiff would fail an alcohol test* if sent for such a test immediately upon arriving at work on July 4, Compl. ¶ 25, ECF No. 37. Plaintiff has alleged that Defendant maintained such a policy, and the Court must accept that allegation as true.

[5] It also bears noting that Plaintiff has alleged that he arrived late for his shift on the day in question. Compl. ¶ 20, ECF No. 37.

typical procedures. With respect to the application of an alcohol test before Plaintiff began his shift, the Court finds that Plaintiff has not alleged any non-conclusory facts sufficient to raise a reasonable expectation that discovery will reveal evidence that Plaintiff's age motivated Defendant's decision to terminate him.

Plaintiff also alleges, however, that Defendant maintained a procedure that permitted an employee, including those under the age of 40, who had failed an alcohol test to take a 30-day leave from work to attend an alcohol treatment program and, following completion of the program, to return to work on a "last chance" notice. Plaintiff further alleges that he was not given an opportunity to complete such treatment and return to work on a last chance notice following the July 4, 2019 failed test. Plaintiff asserts that Defendant's failure to offer him the opportunity to attend treatment and return to work was a part of Defendant's scheme to terminate the Plaintiff based upon his age, and Plaintiff avers that he was thus treated differently than younger employees because younger employees who tested positive for drugs or alcohol were given the opportunity to attend treatment and then return to work on a last chance notice.

The Court previously characterized Plaintiff's allegations in his previous complaint regarding the alleged option for substance abuse treatment and a return to work as "a closer call" than Plaintiff's other allegations, but ultimately found that Plaintiff's assertions respecting Defendant's failure to allow Plaintiff to attend treatment and return to work came up short of stating a plausible ADEA claim. The Second Amended Complaint contains sufficient allegations in this regard to successfully state such a claim.

While Plaintiff could have done more to describe Defendant's alleged practice of allowing certain employees to attend treatment and return to work on a "last chance" notice, he has, in specific fashion, alleged that six younger employees, including an employee who was not

terminated following a positive alcohol test on the job, had similar significant infractions and/or demerit scores and were not terminated, but rather were provided an opportunity to return to work on last chance notices or were otherwise rehired by Defendant.  *See* Br. in Opp'n 5, ECF No. 42 ("The issue in this case isn't solely whether younger employees who have tested for the presence of alcohol are treated differently than older employees, but whether younger employees who have exceeded 100 demerits, or have committed significant infractions are treated differently than older employees who have exceeded 100 demerits, or have committed significant infractions.").  In short, Plaintiff does not simply state in a conclusory manner that others were treated more favorably, he points to specific facts that would tend to establish that younger employees in a similar position to Plaintiff were treated differently and more favorably by Defendant when those similar circumstances arose.

While Defendant cites to *Drummer v. Trustees of Univ. of Pennsylvania*, 286 F. Supp. 3d 674, 682 (E.D. Pa. 2017) in support of its arguments, the Court notes that the plaintiff in that case failed entirely to allege that "other employees who were outside of his protected status, but performed similarly or engaged in similar conduct, were treated differently."  In this case, Plaintiff has advanced such allegations in specific fashion in the Second Amended Complaint.  Defendant also makes much of the fact that Plaintiff has not set forth any allegation that comments or statements were made by Defendant about Plaintiff's age.  While such allegations would certainly support an ADEA claim, it is not the only manner in which a plaintiff can establish that "adverse action occurred under circumstances that *create an inference* that plaintiff's age was a motivating factor." *Dodson*, 773 F. App'x at 80 (emphasis added).  Discovery will provide more information on Defendant's alleged practice of allowing employees who test positive for substances on the job to attend treatment and return to work.  Finally, and as noted above, while Defendant attempts at

this stage to distinguish the six younger individuals' situations factually from Plaintiff's circumstances, the Court is constrained to consider only Plaintiff's factual allegations at this stage of the proceedings, and to consider those allegations in a light most favorable to Plaintiff.

As he did in his previous complaint, Plaintiff also alleges that Defendant retroactively applied demerits to Plaintiff in terminating Plaintiff's employment, and that the same would not have happened to a younger employee. With respect to this assertion, the Court again finds that Plaintiff fails to provide sufficient, non-conclusory allegations as to the nature of the previous incident, the number of demerits eventually imposed (other than it ultimately resulted in Plaintiff having a number of demerits greater than 100 when he failed the alcohol test), the manner in which the alleged retroactive demerits were imposed, how Plaintiff learned of these additional demerits, and/or how the imposition of these demerits resulted in his termination. Plaintiff's allegations regarding the retroactive imposition of demerits are vague and conclusory, and come up short of stating a claim for age discrimination or sufficiently advising the Court or the Defendant of the nature of these allegations. Given the same, and further given that Plaintiff was placed on explicit notice of these deficiencies when the Court dismissed his previous complaint, the Court again finds that Plaintiff fails to allege sufficient facts to support an ADEA claim on this basis.

Turning to Plaintiff's PHRA claim, the Court notes that the elements of a prima facie case of age discrimination are the same under both the ADEA and the PHRA. *Dodson*, 773 F. App'x at 80. The PHRA provides: "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer because of the . . . age . . . of any individual . . . to otherwise discriminat[e] against such individual ... with respect to compensation, hire, tenure . . . if the individual . . . is the best able and most competent to perform the services required." 43 Pa. Stat. Ann. § 955(a). To prevail on a claim of intentional discrimination under the ADEA or the PHRA, "a plaintiff must show that his

or her age 'actually motivated' or 'had a determinative influence on' the employer's decision to fire him or her.'" *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (quotations omitted). "The same legal standard applies to both the ADEA and the PHRA and therefore it is proper to address them collectively." *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 466 n.1 (3d Cir. 2005). Defendant's argument in support of dismissal of Plaintiff's PHRA claim is identical to its argument in support of dismissal of Plaintiff's ADEA claim. Because this Court has already found that Plaintiff has stated an ADEA claim, the Court likewise finds that he has sufficiently pled a claim under the PHRA.

Consistent with the Court's holdings above, Plaintiff's ADEA and PHRA claims may proceed to the extent, and only to the extent, that Plaintiff alleges that Defendant, when faced with similar circumstances involving employees who committed similar significant infractions and/or possessed a similar demerit score to Plaintiff's, did not terminate those employees' employment, but rather provided those employees an opportunity to attend treatment, if applicable, and return to work on a last chance agreement. Given that the Court specifically set forth in its previous Memorandum Opinion the deficiencies in Plaintiff's allegations as to the timing of the alcohol test at issue and Defendant's purported retroactive application of demerit scores, and given that Plaintiff failed to sufficiently address those issues in his Second Amended Complaint, the Court deems claims relying on such allegations to be forfeited at this time.

## IV. Conclusion

For the reasons discussed above, the Court will deny the Motion to Dismiss. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 17, 2023

cc: All counsel of record